IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-249-D

| | |
|---|---|
| RALPH A. HARGROVE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Ralph A. Hargrove ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-24] be granted, Defendant's Motion for Judgment on the Pleadings [DE-26] be denied, and the matter be remanded to the Commissioner for further consideration.

**STATEMENT OF THE CASE**

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on September 22, 2010 (Tr. 61-62), alleging disability beginning September 11, 2010 (Tr. 187, 189).

The application for a period of disability and DIB was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 61-62, 85-86.) On July 18, 2012, a hearing was held before Administrative Law Judge Augustus C. Martin ("ALJ"), who issued an unfavorable ruling on August 14, 2012. (Tr. 11, 101.) On September 24, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.  Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III.  ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since September 11, 2010. (Tr. 92.) Next, the ALJ determined Plaintiff had the following severe impairments: "residuals of burns to the right hand and degenerative disc space narrowing." (*Id.*) The ALJ also found Plaintiff had the non-severe impairments of hypertension, gastroesophageal reflux disease, and obesity. (Tr. 92-93.) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 93-94.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform light work with manipulative restrictions. The ALJ stated, "Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently, sit for 6 hours and stand and walk for 4 hours in an 8-hour work day. The claimant can only occasionally use the right hand for fingering and feeling." (Tr. 94.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (Tr. 98.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a truck driver. (Tr. 99.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 99-100.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends that the ALJ improperly evaluated the consultative examiner's medical opinion and the medical evidence of record when assessing Plaintiff's RFC. Second, Plaintiff asserts that the ALJ improperly evaluated Plaintiff's credibility.

### A. Consulting Examiner

First, Plaintiff contends that the ALJ erred in the weight he credited to the state agency consulting examiner, Dr. Peter Morris. Dr. Morris gave a medical opinion concerning Plaintiff's work capabilities on November 20, 2010. Dr. Morris gave the following work limitations:

> The number of hours that the claimant could be expected to stand and walk in an eight-hour workday is two hours due to his very slow and antalgic gait; his significant difficulty with heel, toe, and tandem walking; and his decreased range of motion in the lower back and both hips.

4

The number of hours that the claimant could be expected to sit in an eight-hour workday is about six hours with a break every one hour.

An assistive device is not medically necessary.

The amount of weight that the claimant could lift and carry is 10 pounds occasionally and 10 pounds frequently due to his slow and antalgic gait; his significant difficulty with heal, toe, and tandem walking; his decreased range of motion in the lower back and both hips; and his decreased grip strength on the right.

The claimant would be expected to have postural limitations due to the difficulty he had performing postural maneuvers. It is estimated that he would be able to perform postural maneuvers only occasionally.

The claimant might have some occasional manipulative limitations using the right hand due to his decreased grip strength in the right hand. No limitations are expected with the left hand.

One workplace environmental limitation would be working at heights due to his very slow and antalgic gait; his significant difficulty with heel, toe, and tandem walking; and his decreased range of motion in the lower back and both hips.

(Tr. 343-44.)

The ALJ analyzed Dr. Morris's opinions, stating:

The undersigned accords this opinion little weight, as it is not supported by the objective findings upon examination with Dr. Morris or the other objective evidence of record. Specifically, in November 2010, the claimant exhibited normal motor strength, muscle bulk and tone and he did not ambulate with an assistive device. Furthermore, the claimant did not have any difficulty getting on and off the examination table and he was able to perform dexterous movements with his hands. Treatment notes from January 2011 and April 2012 showed that the claimant's back pain improved with medication and he ambulated with a slow, steady gait. Moreover, the claimant exhibited good sensation to finger touch in his right hand and he moved his fingers well. Such evidence indicates that Dr. Morris relied quite heavily on the subjective report of symptoms and limitations provided by the claimant in formulating his opinion. Yet, as elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Lastly, the undersigned notes the lack of treating relationship between Dr. Morris and the claimant, which further minimizes Dr. Morris' opinion.

(Tr. 98-99.)

The regulations require the ALJ to consider the medical opinions of any state agency medical consultants. 20 C.F.R. § 404.1527(e)(2); *see also* 20 C.F.R. § 404.1527(c). A "medical opinion" is a "judgment [ ] about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). When evaluating medical opinions from a medical source, the ALJ must consider certain factors including: the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the opinions, , and any specialty or area of expertise. 20 C.F.R. § 404.1527(c). Significantly, "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." *Id; see also* SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996) (stating that ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions").

Here, the ALJ erred in his analysis of Dr. Morris's medical opinions. The medical record indicates that Plaintiff consistently complained of low back pain between November 2010 and the date of the last medical record, May 14, 2012. No medical records are included within the record indicating Plaintiff had sought medical treatment for his back pain before filing.[1] Plaintiff was examined by Dr. Morris after filing his disability claim. The ALJ indicates that Dr. Morris's opinion is inconsistent with both his own examination and the medical record as a whole. However, while the ALJ cites Plaintiff's normal motor strength, muscle bulk and tone, the lack of

---

[1] There are references to two car accidents that may have caused or worsened Plaintiff's back pain, and mention of some x-rays and chiropractic visits, but there is no medical evidence of these instances included in the record. (Tr. 339, 350, 380, 401.)

assistive device to walk, and the fact that Plaintiff did not have difficulty getting on and off the examination table, he did not discuss the objective evidence from the exam that tends to support Dr. Morris's recommendations. First, Dr. Morris explicitly based his recommendations on his objective findings and not the subjective reports from Plaintiff. (Tr. 343-44.) Dr. Morris noted, "[Plaintiff] was able to ambulate without assistance, get on and off the examination table without assistance, and take off his shoes without assistance. However, the claimant had slow movements." (Tr. 341.) Dr. Morris went on the describe Plaintiff's coordination, station, and gait, stating:

> The claimant had a very slow and antalgic gait. He had significant difficulty with heel, toe, and tandem walking. He had significant difficulty with squatting and kneeling; he had to hold onto the examination table in order to perform these postural maneuvers. He had significant difficulty doing heel-knee testing. He was able to do finger-nose testing without difficulty. Romberg was absent.

(Tr. 342.) Dr. Morris went on to test Plaintiff's range of motion in his spine, hip, knee, ankle, shoulder, elbow, wrist, and finger/thumb joints. He determined that Plaintiff had a "decreased range of motion in the lower back and both hips." (Tr. 342-43.) The ALJ did not include any analysis regarding his treatment of Dr. Morris's objective medical findings which support Dr. Morris's medical opinion.

Furthermore, there is evidence in the medical record supporting Dr. Morris's limitations. While oral medications and injections seem to have improved Plaintiff's pain, there were still indications that Plaintiff's back pain continued. On February 25, 2011 and March 25, 2011, the medical record indicates on both occasions that Plaintiff had a "slow and cautious and stiff" gait, that his spine was tender to palpation, that his pain increased with movement and ambulation "as he is groaning with walking," and that Plaintiff walked with a staff. (Tr. 378-79.) On April 29, 2011, September 27, 2011, December 5, 2011, and February 2, 2012, it was noted on each day that

7

Plaintiff had "mild tenderness to palpation of low back pain radiating to left hip down left leg with tingling and weakness in leg"; his "lumbar pain did increase with sitting on the exam table"; and he had a "[s]teady slow gait."  (Tr. 371, 373, 375, 377.)  Additionally, Plaintiff received two lumbar epidural steroid injections ("LESI").  (Tr. 391, 395, 399.)  The first, on October 31, 2011, provided some relief, with Plaintiff indicating he was "30% better" and his pain was a seven out of ten.  (Tr. 397, 399.)  Plaintiff continued to favor his lower left extremity when walking.  (Tr. 397.)  The second LESI, on December 9, 2011, provided no relief.  (Tr. 391.)  Plaintiff also received two intraarticular lumbar facet injections, the first of which was performed on January 20, 2012, and provided more relief that the LESIs.  (Tr. 391.)  Plaintiff was referred on February 27, 2012, for "left-sided medial branch radiofrequency denervation at L3, L4, and L5."  (Tr. 392.)  However, Plaintiff opted for a less invasive procedure and chose to receive a second lumbar facet injection on May 14, 2012.  (Tr. 389.)  There was no follow-up included in the medical record indicating whether the second injection provided Plaintiff relief from his pain.

Lastly, the ALJ's determination that Dr. Morris's opinion was entitled to little weight because of his lack of treatment relationship with Plaintiff, while assigning significant weight to the non-examining state agency consultants without further explanation, makes the ALJ's decision internally inconsistent.  Such an analysis is not supported by substantial evidence.

Absent further discussion, the court is unable to determine whether the ALJ considered Dr. Morris's opinions in light of all of the medical evidence of record and whether the ALJ's findings are supported by substantial evidence.  Thus, the case should be remanded to the Commissioner for further consideration.

**B. Credibility**

Plaintiff also asserts that the ALJ erred in assessing his credibility. (Pl.'s Mem. at 16-20.) Given the undersigned's recommendation that the case be remanded for further consideration of Dr. Morris's medical opinion, there exists a substantial possibility that the Commissioner's credibility finding may be different on remand. Accordingly, the undersigned expresses no opinion whether the Commissioner erred in assessing Plaintiff's credibility.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-24] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-26] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 5th day of January 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge